FILED FEB 15 2019

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TERRY MITCHELL REYNOLDS, JR.,

                                  Plaintiff,       17-CV-00855-FPG

v.                                       DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                  Defendant.
_____

## Introduction

Plaintiff Terry Mitchell Reynolds, Jr. brought this action pursuant to Title II and Title XVI of the Social Security Act seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security disability and supplemental security income benefits. ECF No. 1. Presently before the Court are the parties' competing motions for judgment on the pleadings. ECF No. 7, 9. For the reasons that follow, plaintiff's motion for judgment on the pleadings (ECF No. 7) is **granted**, the Commissioner's motion (ECF No. 9) is **denied**, and the matter is remanded to the Commissioner for further proceedings.

## Background and Procedural History

On September 19, 2013, plaintiff filed applications for supplemental security income and disability insurance benefits alleging disability beginning on November 1, 2011.[1] Administrative Record ("AR.") at 184-96. After the applications were denied, he timely requested a hearing.

Plaintiff appeared and testified before Administrative Law Judge Melissa Lin Jones ("the ALJ") at a hearing held on August 16, 2016. AR. at 23-66. A Vocational Expert ("VE") Rachel A. Dushawn also testified at the hearing. The ALJ issued an unfavorable decision on August 25,

---

[1] At the hearing, plaintiff amended his alleged onset date to November 30, 2013. AR. at 27.

1

2016. AR. at 10-22. Plaintiff then timely requested review by the Appeals Council, which the Council denied on June 30, 2017, making the ALJ's decision the final decision of the Commissioner. AR. at 1-3. Plaintiff subsequently filed this lawsuit.

### Legal Standard

The scope of this Court's review of the ALJ's decision denying benefits to plaintiff is limited. It is not the function of the Court to determine *de novo* whether plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).

This deferential standard of review does not mean, however, that the Court should simply "rubber stamp" the Commissioner's determination. "Even when a claimant is represented by counsel, it is the well-established rule in our circuit that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009); *see also Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."). While not every factual conflict in the record need be

2

explicitly reconciled by the ALJ, "crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983). Moreover, "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

## Discussion

### A) The ALJ's Decision

At step one of the sequential analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 30, 2013 through his date last insured of March 31, 2016. A.R. at 12. At step two, the ALJ found that plaintiff suffered from two severe impairments: asthma and anxiety. *Id.* At step three of the analysis, the ALJ found that the severity of plaintiff's impairments did not meet or equal the criteria of any listing. A.R. at 13-14. The ALJ then determined that plaintiff retained the residual functioning capacity ("RFC") to perform light unskilled work with additional limitations. Specifically, the ALJ found that plaintiff could frequently climb ramps or stairs, occasionally climb ladders, ropes, scaffolds or stoop; and should avoid concentrated exposure to dust, odors, fumes, pulmonary irritants, extreme heat and extreme cold. A.R. at 14. At step four, the ALJ found that plaintiff was unable to perform his past relevant work. The ALJ then proceeded to step five, where she determined that there are jobs in

3

the national economy that a person of plaintiff's age, education and work experience could perform. AR. at 16. Specifically, the ALJ determined that plaintiff can perform work as a fast food worker, ticket taker, or usher. AR. at 17.

**B) <u>Analysis</u>**

Plaintiff argues that the ALJ failed to acknowledge plaintiff's scoliosis as a severe impairment and account for functional limitations arising from plaintiff's scoliosis in her RFC determination. *See* Pl's Br. 9 (ECF No. 7-1). This Court agrees.

1. <u>Plaintiff's scoliosis:</u>

As an initial matter, in step two of the sequential analysis, the ALJ is required to determine whether an impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least 12 months limits claimant's physical or mental ability to do basic work activities. 20 C.R.F. §§ 404.1509, 404.1520(c). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" "[c]apacities for seeing, hearing, and speaking;" "[u]nderstanding, carrying out, and remembering simple instructions;" "[r]esponding appropriately to supervision, co-workers and usual work situations;" and "[d]ealing with changes in a routine work setting." *See* 20 C.F.R. § 404.1522(b).

Although plaintiff bears the burden of proof at step two, it is not a heavy burden. The Second Circuit has long held that "the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)). However, despite this lenient standard, the "'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Taylor v. Astrue*, 32 F. Supp. 3d 253,

4

266 (N.D.N.Y. 2012) (internal citation omitted). Where a claimant produces some evidence of an impairment, the Commissioner may make a determination of non-disability at step two only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *See* SSR 85-28, 1985 WL 56856, at *3 (1985). Such determination is made after the ALJ carefully evaluates the medical findings that describe the impairment and by making "an informed judgment about its limiting effects on the individual's physical . . . ability to perform basic work activities[.]" *Id.* at *4.

Here, the ALJ found that plaintiff had two severe impairments – asthma and anxiety, and determined that his hernia, "degenerative changes," scoliosis of the lower back, ADHD, and a learning disorder were not severe because they did not cause more than minimal limitations to plaintiff's ability to perform basic work activity. AR. at 12-13. In regards to scoliosis, the ALJ specifically noted that despite the evidence of plaintiff battling it for many years, having two corrective surgeries, and testifying about the worsening of the pain associated with it, the record did not demonstrate that plaintiff had more than minimal limitations resulting from scoliosis. *Id.* This Court disagrees and finds that plaintiff has met his burden at step two of the analysis by showing that there is medical evidence in the record supporting the conclusion that his scoliosis was more than "a slight abnormality" which had more than a minimal effect on plaintiff's ability to work.

Specifically, the record contains treatment notes from plaintiff's treating physicians, as well as radiology imaging records, that demonstrate the severity of plaintiff's scoliosis, the worsening of his back pain due to scoliosis, and its detrimental effect on the overall status of plaintiff's back. Specifically, treatment records of plaintiff's treating physician Dr. McTernan, Jr., who treated plaintiff for over two years, demonstrate that plaintiff continuously complained of

5

arthritis, limitation of movement, lower back pain, left shoulder pain, and severe scoliosis. AR. at 453, 461, 474, 477, 485, 488, 495, 499, 503, 518-19, 527. On March 26, 2015, Dr. McTernan opined that plaintiff's chronic back pain caused by scoliosis will require additional surgery to stabilize his back. AR. at 490-92. Nearly a year later, on January 14, 2016, following another visit to treat back pain that plaintiff had for two weeks, Dr. McTernan referred plaintiff to a neurosurgeon for further evaluation of his scoliosis and pain management to control plaintiff's chronic pain associated with it. AR. at 528-29. Similarly to Dr. McTernan, treatment notes of plaintiff's orthopedic specialist Dr. Mata, dated August 15, 2014 and March 4, 2016, revealed that plaintiff's persistent shoulder pain was secondary to his overall posture and thoracic humps caused by scoliosis. AR. at 410-12, 545. Notably, Dr. Mata opined that no possible treatment or surgical intervention could relieve plaintiff's symptoms caused by scoliosis. *Id.*

Additionally, images of plaintiff's spine taken on November 13, 2013, revealed that he had severe degenerative changes in his spine with partially visualized scoliotic curvature and cervicothoracic spine hardware. AR. at 281. Similarly, chest radiography images received dated July 15, 2014 and January 6, 2016, demonstrated that plaintiff had extreme left scoliosis curvature with paired curved, but not broken, Harrington rods. AR. at 329, 403, 522.

These findings of plaintiff's primary treating physicians describing the severity of plaintiff's scoliosis were also supported by plaintiff's hearing testimony, when plaintiff, who was 28 years old at the time of the hearing, testified about suffering from scoliosis from a young age. Plaintiff indicated that he underwent two back surgeries to treat scoliosis when he was 14 and 17 years old, however, despite these surgeries, his back problems had gotten worse over the years to the point that he could no longer work because of his back pain. AR. at 42, 409, 452. Plaintiff described his pain as sharp, triggered by sitting, standing or walking for too long, and making him feel "like the screws [were] coming out [of his back]." AR. at 42-44. He testified that he could

6

stand up to ten minutes before changing positions, walk up to fifteen minutes before taking a break, and sit up to thirty minutes, but only if he were to shift his body weight from one arm to another. AR. at 44-45. Plaintiff further stated that he could not bend forward or lean over without pain, which was the reason why getting dressed and tying his shoes caused him a lot of discomfort. AR. at 45-46. Plaintiff indicated that he took Ibuprofen, hot showers, or laid down for thirty minutes to an hour several times per day to relieve the pain. AR. at 42-44.

Therefore, based on plaintiff's testimony about the severity of his scoliosis and the inability to work because of it, as well as all relevant medical evidence provided by plaintiff's treating physicians, the ALJ had sufficient evidence to rely on to determine that plaintiff's scoliosis was more than "a slight abnormality or combination of slight abnormalities[,]" that had more than a minimal effect on his ability to work. *See* SSR 85-28, 1985 WL 56856, at *3 (1985). Consequently, it was an error for the ALJ not to consider plaintiff's scoliosis as severe impairment in step two of the analysis.

2. RFC determination

As a general matter, an error in step two is not always fatal where an ALJ proceeds to remaining steps and consider an erroneously determined "non-severe" impairment during the RFC determination in step four. *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013). However, this was not the case here. Even when assuming the ALJ's omission of scoliosis was harmless error because she had found other severe impairments and considered plaintiff's back pain during her sequential analysis, the Court concludes that the ALJ did not properly accounted for plaintiff's scoliosis when she determined his RFC.

Here, ALJ determined that plaintiff was capable of performing light unskilled work and that he could frequently climb ramps or stairs, occasionally climb ladders, ropes, scaffolds or stoop; and should avoid concentrated exposure to dust, odors, fumes, pulmonary irritants, extreme

7

heat and extreme cold. AR. at 14. To arrive at this conclusion and determine plaintiff's physical limitations, the ALJ relied on the opinions of three state agency consultants – assessments of Dale Van Sclooten, MD, and Matthew Fox, MD, that were provided at the initial and reconsideration levels, and the opinion of Dr. Das. AR. at 86-94, 98-09. Even though the ALJ afforded such opinions "little" and "some" weight, her reliance on them is troubling. First, the ALJ afforded "little" weight to Dr. Das's opinion that plaintiff was not able to do heavy lifting because the opinion was issued prior to plaintiff's hernia operation, from which he made a full recovery. Indeed, because plaintiff had a surgery operation following the evaluation by Dr. Das, the ALJ correctly disregarded that portion of Dr. Das's opinion. However, Dr. Das also opined that plaintiff did not have any other significant medical problems besides hernia. AR. at 283. The Court is concerned about the accuracy of this portion of the opinion because it appears that even though the opinion was based solely of plaintiff's subjective allegations, Dr. Das simply ignored plaintiff's complaints of back pain and scoliosis, and failed to address them in his evaluation. *Id.* Additionally, the ALJ's reliance on Dr. Das's opinion was flawed not only because it predated the hearing by nearly three years, but also because it did not take into consideration the significant deterioration of plaintiff's impairment following Dr. Das's examination in 2013. While the Court recognizes that the age of a medical opinion might not necessarily render it stale, *Andrews v. Berryhill*, No. 17-CV-6368(MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018), however here, the record contains substantial evidence demonstrating the worsening of plaintiff's back pain and increased shoulder pain due to deterioration of his scoliosis. *See Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017) ("A medical opinion may be stale if it does not account for the claimant's deteriorating condition.")

The ALJ's reliance on Dr. Das's opinion is also troubling because as a "nontreating source," Dr. Das did not have an ongoing treatment relationship with plaintiff, and, consequently,

8

could not provide credible opinion regarding his physical limitations after a single visit. 20 C.F.R. § 416.902; *see also Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) ("ALJs should not rely heavily on the findings of consultative physicians after a single examination."); *Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009) ("We also acknowledge that generally, 'in evaluating a claimant's disability, a consulting physician's opinions or report should be given little weight.'")(quoting *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)). For the same reasons, the ALJ should not have relied on the opinions of Dr. Sclooten and Dr. Fox when she determined plaintiff's RFC. Though she acknowledged the non-examining nature of their relationships with plaintiff by assigning their assessments "some weight" because they were "based on a review of records," the ALJ's consideration of their opinions was, nonetheless, improper since both assessments were conclusory, stale, and based on an incomplete medical record. AR. at 87-88, 99-00; *see Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003) ("the reports of two SSA consulting physicians, who did not examine [plaintiff], are . . . not substantial evidence.")

Moreover, the ALJ's determination that plaintiff's impairments were consistent with limitations of light work (AR. at 16) was not based on any objective medical evidence or medical opinions "that reflect judgments about the nature and severity" of plaintiff's physical limitations. 20 C.F.R. § 404.1527 (a)(1). In fact, the record does not contain a single medical opinion that addresses plaintiff's ability to stand, walk, sit[2], climb ladders, or stoop, which would support the ALJ's conclusions that plaintiff could "frequently climb ramps or stairs[,] and occasionally climb ladders, ropes, or scaffolds[,] or stoop." AR. at 14. Even though the record contains treatment notes of Dr. McTernan and Dr. Mata, both of whom regularly opined regarding the severity of

---

[2] The regulations provide that light work "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *See* 20 C.F.R. § 404.1567 (b). They also define light work as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.*

9

plaintiff's scoliosis and poor prognosis of future recovery, it does not contain an assessment of plaintiff's functional limitations, particularly limitations associated with scoliosis, provided by either of them, which the ALJ could rely upon in formulating the RFC. *Cadet v. Colvin*, 121 F. Supp. 3d 317, 320 (W.D.N.Y. 2015) ("As such, where a record contains no formal RFC assessments from a treating physician, and does not otherwise contain sufficient evidence . . . from which the petitioner's RFC can be assessed, an 'obvious gap' exists and the ALJ is obligated to further develop the record." (internal citations omitted). Because of the gap in the record regarding plaintiff's physical limitations caused by scoliosis which the ALJ could rely on to determine that plaintiff was capable of performing light work, the ALJ simply substituted her own judgment for credible medical opinion when she arrived at such RFC. This was an error warranting remand. Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998)("While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician.") (internal citations omitted).

Given the lack of RFC assessments from plaintiff's treating physicians, as well as the lack of an updated medical source opinion prepared by a consultative examiner, the ALJ was obligated to further develop the record and contact Dr. McTernan, Dr. Mata and a consultative examiner and obtain their opinions regarding plaintiff's physical limitations stemming from scoliosis in order to make a proper RFC determination. Her failure to do so requires remand. *See Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (remand is warranted when the ALJ failed to develop the record regarding the nature and extend of plaintiff's subjective symptoms and obtain statements from plaintiff's treating physicians); *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)(the ALJ has the affirmative duty to develop the record such that there are no inconsistencies that would require further inquiry); *Ubiles v. Astrue*, No. 11-CV-6340T(MAT), 2012 WL 2572772, at *8 (W.D.N.Y. July 2, 2012)(when there is a gap in the record concerning the findings

10

of a treating physician, the ALJ has an affirmative duty to seek out the missing information). Therefore, on remand, the Court directs the Commissioner to contact plaintiff's treating physicians to obtain their opinions regarding plaintiff's ability to perform light work and his functional limitations, if any, stemming from plaintiff's severe scoliosis. The Commissioner may also obtain an updated RFC assessment from a consultative examiner.

## Conclusion

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (ECF No. 7) is **granted**, the Commissioner's motion for judgment on the pleadings (ECF No. 9) is **denied**, and the case is remanded for further administrative proceedings consistent with this Decision and Order pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: February 15, 2019
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court